**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jon Phelps, | No. CV-24-03710-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Signify Health, *et al.*, | |
| Defendants. | |

At issue is Defendant Signify Health, LLC's Motion for Summary Judgment (Doc. 25; sealed Doc. 31, MSJ), Supported by a Statement of Facts (Doc. 26; sealed Doc. 32, DSOF), to which Plaintiff Jon Phelps filed a Response (Doc. 34; sealed Doc. 39, Resp.), Supported by a Statement of Facts (Doc. 35; sealed Docs. 39-1, 39-2, PSOF), and Defendant filed a Reply (Doc. 40; sealed Docs. 45, 46, Reply). As a result of that briefing, the Court entered an Order (Doc. 43) requiring additional briefing, and Defendant filed a Supplemental Reply (Doc. 47; sealed Doc. 48, Supp. Reply) and Plaintiff filed a Sur-Reply (Doc. 49; sealed Doc. 50, Sur-Reply). The Court finds it appropriate to resolve the Motion without oral argument, LRCiv 7.2(f), and therefore denies Defendant's Request for Oral Argument (Doc. 51). In this Order, the Court does not reveal any information it considers to be protected health information or otherwise confidential in the context of this lawsuit, and thus the Court does not redact or seal the Order.

. . .

. . .

## I.    BACKGROUND

In the First Amended Class Action Complaint (Doc. 16), Plaintiff claims Signify Health violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), by calling Plaintiff using a prerecorded voice without his prior express consent.

Signify Health is a healthcare service provider that conducts phone call outreach on behalf of health insurance providers to notify members of healthcare services included in the member's plan. (MSJ at 3; DSOF ¶¶ 3, 9.) One of Signify Health's clients is non-party Aetna Life Insurance and its affiliates (collectively, "Aetna"). (MSJ at 2–3; DSOF ¶ 3.) Signify Health and Aetna's business relationship is contractually established through a Master Business Agreement ("MBA") between Signify Health's predecessor and Aetna, as well as Schedule 5 to the MBA.[1] (DSOF ¶¶ 4, 6, 7; Taylor Decl. Ex. A, MBA; Ex. C, Schedule 5.)

The parties agree Plaintiff began the process of purchasing health insurance in December 2022, enrolling in a Banner-Aetna plan administered by Aetna effective January 1, 2023. (MSJ at 2; DSOF ¶¶ 10, 14.) As part of the registration process, Plaintiff provided his phone number to Aetna. (DSOF ¶ 11.) Between August and December 2024, Plaintiff received four prerecorded calls from Signify Health to the number he provided during the Aetna registration process. (DSOF ¶ 29.) The prerecorded calls asked the recipient to call Signify Health to discuss a service that was included as part of his membership:

> Hello my name is <MEC Name> and I am calling on Behalf of <Health Plan>, your insurance provider. I was hoping to speak with you about a valuable service that's included in your membership. If you would please call <Client TFN>. We are available 7am to 7pm Central Time Monday through Friday. We look forward to hearing from you and have a wonderful day.

---

[1] In his Response, Plaintiff was under the impression that the relationship between Signify Health and Aetna was also governed by a Provider Vendor Services Agreement (PSOF, Lindner Decl. Ex. B) and a Business Associate Agreement (Provider Services Agreement Ex. L), but in its Reply, Signify Health clarified that those agreements were between it and Banner Plan Administration, Inc., not Aetna, so they are inapplicable here. (Reply at 7.)

(DSOF, Taylor Decl. Ex. E.)

In the Motion, Signify Health contends it is entitled to summary judgment on the grounds that the undisputed evidence shows Plaintiff provided the express consent required by the TCPA when he provided his phone number to Aetna as part of the registration process and that the consent provided to Aetna extends to Signify Health as its agent. (MSJ at 13.) In his Response, Plaintiff argues that the evidence shows instead that Signify Health's prerecorded calls exceeded the scope of Plaintiff's consent and, even if there was consent, it does not extend to Signify Health because it is not an agent of Aetna under the terms of their Agreements. (Resp. at 2, 9.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of

1    production, the nonmoving party must produce evidence to support its claim or defense.

2    *Id*. at 1103. Summary judgment is appropriate against a party that "fails to make a showing

3    sufficient to establish the existence of an element essential to that party's case, and on

4    which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

5        In considering a motion for summary judgment, the court must regard as true the

6    non-moving party's evidence, as long as it is supported by affidavits or other evidentiary

7    material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest

8    on its pleadings; it must produce some significant probative evidence tending to contradict

9    the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57

10    (holding that the plaintiff must present affirmative evidence in order to defeat a properly

11    supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045

12    (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on

13    conclusory allegations unsupported by factual data." (citation omitted)).

14    **III.    ANALYSIS**

15        To prevail on his claim under the TCPA, Plaintiff must prove: (1) he received a call,

16    (2) using an artificial or prerecorded voice, (3) without his prior express consent. 47 U.S.C.

17    § 227(b)(l)(A). Because the parties agree that elements one and two are satisfied, the

18    analysis will focus on the third element.

19        **A. Plaintiff's Consent**

20        The Ninth Circuit has adopted the Federal Communications Commission's (FCC)

21    interpretation of "prior express consent," which occurs when a party knowingly provides

22    his phone number to the caller. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037,

23    1045 (9th Cir. 2017). However, the consent does not apply to all communications by the

24    caller, but rather the scope of consent is limited to the same subject matter for which the

25    number was originally provided. *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789,

26    793 (9th Cir. 2018) ("[A] call must relate to the reason why the called party provided his

27    or her phone number in the first place.")

28

In this case, the parties agree that Plaintiff provided his phone number to Aetna by typing it into his member account, and he confirmed it on several occasions. (DSOF, Chamberlain Decl. ¶¶ 19–24, Exs. B, E, F.) Applying the standard from *Van Patten*, this constitutes express consent for prerecorded communications within the transactional context it was given as a matter of law. Thus, the key issue is whether the communications received by Plaintiff fall within the scope of his consent.

In *Van Patten*, the court dealt with a similar claim where the plaintiff provided his phone number while signing up for a gym membership. *Van Patten*, 847 F.3d at 1046. Years after the plaintiff cancelled his membership, he received a promotional text inviting him to reinstate his membership. *Id.* at 1041. The court held that, as a matter of law, the scope of plaintiff's consent included receiving text messages for the purpose of gym memberships. *Id.* at 1046. However, the court was careful to emphasize the scope of consent did not include being contacted for any purpose. *Id.* at 1046 ("FCC orders and rulings show that the transactional context matters in determining the scope of a consumer's consent to contact.").

Signify Health contends that the scope of Plaintiff's consent included calls related to his health care services. (MSJ at 10.) In contrast, Plaintiff views the scope of consent more narrowly. He argues that Signify Health's calls fall outside of the scope of consent because they were motivated by profit and related only to services provided by Signify Health, not Aetna. (Resp. at 3.) Plaintiff further argues that allowing the scope to include calls of this type would open the door to calls to "solicit appointments and give a sales pitch for their services." (Resp. at 5.)

To support his argument, Plaintiff cites to *Jacksen v. Chapman Scottsdale Autoplex, LLC*, No. CV-21-00087-PHX-DGC, 2023 WL 142533, at *1 (D. Ariz. Jan. 10, 2023), a case in which the court found the communications exceeded the scope of consent. There, the plaintiff provided her phone number to a car dealership for the express purpose of "servicing and collection contacts" related to her purchase of a vehicle. *Id.* Five years later, the plaintiff received marketing communications to purchase a new vehicle. *Id.* The court

1    found the communications exceeded the scope of consent because communications about

2    a new vehicle were unrelated to servicing or collections for the original vehicle. *Id.*

3        Plaintiff points to evidence that, on multiple occasions on the online membership

4    portal, he did not check a box to opt-in to receiving messages about "updates about

5    additional resources for your health, like digital apps, memberships and rewards" or being

6    contacted using an artificial or "prerecorded voice by Signify Health or any other

7    BannerAetna Provider." (Resp. at 7; PSOF ¶¶ 37–47.) Plaintiff thus contends he expressly

8    rejected the communications in controversy. (Resp. at 7.) Moreover, Plaintiff argues that

9    Signify Health is motivated by profit because it is paid based on the number of sign-ups it

10   gets from the calls, so it is incentivized to harass customers and its communications

11   constitute telemarketing that falls outside the scope of consent. (Resp. at 11.) However,

12   while this evidence may show that Plaintiff did not consent to calls about additional

13   resources, the calls at issue were about something different: Plaintiff's existing

14   membership.

15       Whether Signify Health was motivated by profit or an altruistic desire to improve

16   Plaintiff's health is ultimately irrelevant to the analysis of the scope of consent that was

17   actually created. Under the FTCA, the question is whether the calls by Signify Health were

18   within the scope of consent and are related to the reasons Plaintiff provided the number in

19   the first place. The Court finds that, as a matter of law, they are. Like the scope of consent

20   in *Van Patten*, the undisputed evidence demonstrates that when Plaintiff provided his

21   number, he consented to communications related to his health care plan. The undisputed

22   evidence also shows the actual calls received by Plaintiff were about "a valuable service

23   that's included in [his] membership"—scheduling healthcare appointments. These calls

24   were directly related to Plaintiff's existing policy and did not attempt to induce Plaintiff to

25   sign up for services unrelated to his policy. Even if Plaintiff opted out of receiving other

26   communications, the communications he received from Signify Health are within the scope

27   of consent as a matter of law.

28   …

1

2

### B. The Existence of an Agency Relationship Between Aetna and Signify Health

3

Where Plaintiff consented to receiving certain prerecorded communications from Aetna, the question remains whether that consent extended to communications from Signify Health. Like the FCC's interpretation of express consent, the Ninth Circuit has adopted the FCC's interpretation of agency law to allow consent for electronic communications to extend from principal to agent for the purposes of the TCPA. *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) ("[C]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." (quoting *In re Rules & Reguls. Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995))). As Signify Health sets forth in its Supplemental Reply (Supp. Reply at 3), an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017). The agent "must have authority to act on behalf of the principal" and the principal must have "a right to control the actions of the agent." *Id.* (quoting Restatement (Third) of Agency § 1.01 cmt. c).

Beginning with the plain language of the agreements between Signify Health and Aetna, the MBA states that Signify Health, as Aetna's supplier, "will perform work as an independent contractor and not as an agent of Aetna." (MBA § 4A.) However, Schedule 5 contains detailed provisions requiring Signify Health to call and send text messages to Aetna members for initial outreach and to offer and schedule an assessment, screening, or other services to members. (Schedule 5 §§ 4.3, 4.3.1, 4.3.4.) Schedule 5 also explicitly provides that Aetna agrees that Signify Health will use prerecorded messages in its communications. (Schedule 5 § 4.3.4.) And Schedule 5 as a whole, as well as multiple specific provisions, demonstrate that Aetna controls the actions of Signify Health in making calls on Aetna's behalf and to Aetna's members. (*E.g.*, Schedule 5 § 6.11.) The

1  Court agrees with Signify Health that, to the extent there is a conflict in the creation of an

2  agency relationship between the MBA's provision that Signify Health "will perform work

3  . . . not as an agent of Aetna" and the language of Schedule 5 explicitly establishing an

4  agency relationship for the purpose of Signify Health's use of prerecorded calls on behalf

5  of Aetna and to Aetna's members, the statement in Schedule 5 that its provisions prevail

6  in any conflict between it and the MBA (Schedule 5 at 1, Preamble) leaves no question that

7  Signify Health acted as Aetna's agent in placing prerecorded calls to Plaintiff on behalf of

8  Aetna.[2] Plaintiff points to no other evidence that Signify Health did not have the requisite

9  agency relationship with Aetna.

10      Because there is no genuine issue of fact as to whether Plaintiff's prior express

11  consent applied to both the content of the prerecorded calls he received and the fact that

12  Signify Health made the calls on behalf of Aetna and to its members, and thus there is no

13  genuine issue of fact as to Plaintiff's TCPA claim, Signify Health is entitled to summary

14  judgment.

15      **IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary

16  Judgment (Doc. 25; sealed Doc. 31).

17      **IT IS FURTHER ORDERED** denying Defendant's Request for Oral Argument

18  (Doc. 51).

19  . . .

20  . . .

21  . . .

22  . . .

23

24  [2] The Court does not agree with Signify Health's alternative argument (Supp. Reply at 5)
that no agency relationship—that is, no Schedule 5 or related evidence at all—is required

25  for the prior express consent of the recipient of a prerecorded call received by Aetna to
automatically apply to Signify Health. The case on which Signify Health relies for this

26  alternative proposition, *Shields v. Sonora Quest Laboratories*, 2017 WL 3841489, at *9
(D. Ariz. Mar. 29, 2017), in turn relies on the FCC's decision in *In the Matter of Groupme

27  Inc./Skype Communications*, 29 FCC Rcd. 3442 (2014). There, the FCC resolved whether
consent of individuals collected by an intermediary—a group leader—to receive

28  communications from the caller was adequate express prior consent under the TCPA. No
such scenario exists here; rather, Aetna received the consent of an individual and then
contracted with an agent to call on its behalf and to its members.

1    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in

2    favor of Defendant and to close this matter.

3    Dated this 5th day of November, 2025.

4

5    Honorable John J. Tuchi
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28